IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| In re: | ) | Case No. | 11-25515 |
| | ) | | |
| ARGENTUM MEDICAL, LLC, a Delaware limited liability company | ) ) | Chapter: | 11 |
| | ) | Judge: | Timothy Barnes |
| Debtor-in-Possession | ) | | |
| | ) | Hearing: | July 24, 2012 at 10:30 a.m. |

**FREEBORN & PETERS LLP'S OBJECTION
TO MOTION FOR ENTRY OF FINAL DECREE**

Freeborn & Peters LLP ("*F&P*"), a creditor of debtor Argentum Medical, LLC (the "*Debtor*" or "*Argentum*"), by its undersigned counsel, hereby submits its objection (the "*Objection*") to Debtor's *Motion For Entry of Final Decree* (the "*Motion*"), Doc. 363. In support of the Objection, F&P states as follows:

**RELEVANT BACKGROUND**

*A.     Introduction*

1.      On June 17, 2011 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under Chapter 11 (the "*Bankruptcy Case*") of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Northern District of Illinois (the "*Bankruptcy Court*").

2.      On September 14, 2011, the Office of the United States Trustee appointed a committee of unsecured creditors (the "*Committee*") to represent the interests of all unsecured creditors in the Bankruptcy Case pursuant to Section 1102 of the Bankruptcy Code. *See* Doc. 63.

3. No trustee nor examiner has been appointed in the Bankruptcy Case. The Debtor has operated its business and managed its affairs as a debtor in possession since the Petition Date and continues to operate its business post-confirmation as a reorganized debtor.

B. *Argentum and F&P's Claims*

4. Prior to the Petition Date, F&P represented the Debtor in litigation entitled *Argentum Medical LLC v. Noble Biomaterials and Derma Sciences Inc.* before the United States District Court for the Middle District of Pennsylvania (the "*Pennsylvania District Court*"), 3:08-cv-1305, and in which defendant Noble Biomaterials ("*Noble*") counterclaimed against the Debtor, and its shareholders Gregg Silver ("*Silver*") and Thomas Miller ("*Miller*"). The counterclaims of Noble against the Debtor, Silver and Miller are collectively referred to herein as (the "*Noble Litigation*").

5. Prior to Argentum engaging F&P, the Pennsylvania District Court dismissed Argentum's causes of action against Noble, resulting in the only remaining claims being those of Noble against the Debtor and Silver and Miller.

6. The Debtor engaged F&P to represent it at trial in the Noble Litigation. Prior to engaging F&P, the Debtor had engaged the law firms of Rockey Depke and Oliver Price & Rhodes to represent its interests. However, subsequent to the engagement of F&P with respect to the Noble Litigation, Oliver Price & Rhodes continued to represent Argentum, Silver and Miller in the Noble Litigation; the law firm of Rockey, Depke & Lyons, LLC ("*Rockey Depke*") never withdrew its representation of Argentum, Silver and Miller.

7. On February 10, 2011, the Pennsylvania District Court entered judgment in the Noble Litigation in favor of Noble and against the Debtor, Silver and Miller on certain of Noble's counterclaims (the "*Noble Judgments*").

8. Thereafter, in approximately June 2011, Argentum, Silver and Miller each separately engaged F&P to prepare responses on their behalf to post-judgment discovery that Noble Biomaterials served on Argentum, Silver and Miller in the Noble Litigation (the "*Post-Judgment Discovery*").

9. Argentum has alleged during the Bankruptcy Case that it may have claims against F&P with respect to its representation of Argentum prior to and during the Noble Litigation (the "*Argentum Claims*"). Nonetheless, F&P has consistently denied any liability to Argentum, Silver and Miller on account of the Argentum Claims or otherwise.

10. On September 9, 2011, F&P timely filed a proof of claim in the Bankruptcy Case ("*F&P Claim*"). Pursuant to the F&P Claim, F&P contends that it holds an unsecured claim against Argentum in the amount of $1,063,108.36 for legal services associated with the Noble Litigation and the Post-Judgment Discovery.

C. *The Rockey Depke Litigation*

11. On December 2, 2011, the Debtor, along with Silver and Miller, filed a legal malpractice action against Rockey Depke and attorney Joseph Fuch ("*Fuch*") in the United States District Court for the Northern District of Illinois (the "*Illinois District Court*"), 1:11-cv-08594, wherein they allege that the defendants committed professional negligence in connection with the Noble Litigation (the "*Rockey Depke Litigation*"). The plaintiffs are seeking a judgment in excess of five (5) million dollars, plus costs of suit.

12. On January 17, 2012, Rockey Depke and Fuch filed *Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(7) and 12(b)(6)* (the "*Motion to Dismiss*") wherein they argue, in part, that the Rockey Depke Litigation should be dismissed for failure to join F&P as an indispensable party. *See* 1:11-cv-08594, Doc. 15. The Motion to Dismiss is pending before the Illinois District Court.

### D.   The F&P Settlement Agreement

13. In order to avoid the expense and uncertainty of litigating the merits of the F&P Claim and the Argentum Claims in the Bankruptcy Case, and without any admission of liability or wrongdoing, the Parties entered into a settlement agreement (the "*Agreement*") that sought to compromise, fully and finally resolve, and permanently settle any claims and causes of action that each may have against the other.

14. The pertinent terms of the Settlement Agreement can be summarized as follows:[1]

- In consideration of the releases, agreements and covenants set forth in the Agreement, F&P will hold an allowed unsecured claim in the reduced amount of $350,000 (the "*Settlement Amount*") against the Debtor and the bankruptcy estate;

- The Settlement Amount shall be paid to F&P on the thirtieth (30th) day subsequent to the day that the order confirming the Debtor's Chapter 11 plan becomes a final order (the "*Effective Date*"), in cash, in full, from SIG Funding ("*SIG*") or from the Debtor's Operations;

- SIG shall fund an escrow account (the "*Escrow Account*") with the Settlement Amount for the benefit of F&P;

- The Agreement is specifically contingent upon and subject to the Bankruptcy Court signing and entering an order that (i) approves the Settlement Agreement and all terms contained therein, (ii) expressly finds that the Settlement Agreement and all terms contained therein are made in good faith within the meaning of, and consistent with, the Joint Tortfeasor Contribution Act (the "*Contribution Act*"), 740 ILCS 100/2

---

[1] The summary of the terms of the Settlement Agreement is provided only to highlight the most pertinent provisions of the parties' negotiated resolution. To the extent there is any conflict between the terms of the summary and the Settlement Agreement, the terms of the Settlement Agreement shall govern.

> *et seq.*, and (iii) expressly retains in the Bankruptcy Court jurisdiction to enforce the Settlement Agreement and to enforce the order approving the same;
>
> - The Agreement is specifically contingent upon and subject to the Illinois District Court signing and entering an order that (i) expressly finds that this Agreement and all terms contained in the Settlement Agreement are made in good faith within the meaning of, and consistent with, the Contribution Act, and (ii) expressly retains in the Illinois District Court jurisdiction to enforce the Settlement Agreement and to enforce the order approving the same; and
>
> - Absent the Bankruptcy Court's approval of the Settlement Agreement and the Illinois District Court's entry of an order approving the Settlement Agreement, or absent confirmation of a Chapter 11 Plan and entry of a final order, the Settlement Agreement is null and void as to all parties and F&P will be permitted to pursue the full amount of the F&P Claim, regardless of any deadlines in the Bankruptcy Case.

*See* Exhibit A, attached hereto and incorporated herein.

15. In March and April 2012, the Debtor filed motions with the Bankruptcy Court and the Illinois District Court wherein it sought approval of the Settlement Agreement and a finding from both courts that the Settlement Agreement was made in good faith within the meaning of the Contribution Act. *See* Doc. 240. *See also* 1:11-cv-08594 (N.D. Ill.), Doc. 20, 25, 35

16. On April 19, 2012, the Illinois District Court denied the Debtor's *Motion for Good Faith Finding* without prejudice. *See* Exhibit B at Doc. 37, attached hereto and incorporated herein. The Illinois District Court concluded that in light of the Motion to Dismiss pending in the Rockey Depke Litigation, other factual evidence may be necessary before a determination that the Settlement Agreement was made in good faith within the meaning of, and consistent with, the Contribution Act could be made. *See id.* As of the filing of this Objection, the Illinois District Court had not ruled on the Motion to Dismiss nor issued a good faith finding with respect to the Settlement Agreement.

17. On April 25, 2012, the Bankruptcy Court signed an order approving the Settlement Agreement. *See* Exhibit C, attached hereto and incorporated herein. The Bankruptcy

Court specifically found that the Settlement Agreement was made in good faith within the meaning of the Contribution Act. *See id*.

### E. *Debtor's Third Amended Plan of Reorganization*

18. After extensive negotiations between the Debtor, Silver and Miller regarding F&P's treatment in Argentum's proposed plan of reorganization, and in conjunction with the parties' negotiation of the Settlement Agreement, F&P did not object to *Debtor's Third Amended Plan of Reorganization* (the "*Plan*"). Although F&P filed its ballot in support of the Plan, its support was subject to the Bankruptcy Court's approval of the Settlement Agreement. Under the terms of Plan, F&P was classified separately from general unsecured creditors and holds a Class 4 claim as an impaired unsecured creditor with an allowed general unsecured claim in the amount of $350,000. *See* Doc. 180, at p. 21.

19. On April 26, 2012, an order confirming the Plan was entered (the "*Confirmation Order*"). *See* Exhibit D, attached hereto and incorporated herein. To further reiterate and memorialize the agreement reached between the Debtor, Silver, Miller and F&P regarding the F&P Claim and the Argentum Claims, the Confirmation Order specifically provides that:

> The proposed settlement of the claim of Freeborn & Peters having been approved by the Court, and this Court having made an express finding, and issued an Order, that the settlement between the Debtor, Gregg Silver, Thomas Miller and Freeborn & Peters is approved and entered into in good faith. **The Debtor, Gregg Silver and Thomas Miller shall continue their pursuit of a good faith finding in the District Court with respect to the settlement between the Debtor, Silver and Miller and Freeborn & Peters. In the event they cannot obtain a good faith finding from the District Court that is consistent with their settlement with Freeborn & Peters, Freeborn & Peters retains its right to pursue the full amount of its filed proof of claim against the Debtor and the Debtor retains its rights against Freeborn & Peters each consistent with the settlement agreement between the Debtor, Gregg Silver, Thomas Miller and Freeborn & Peters.** The $350,000 escrow currently in place for purposes of funding the Freeborn & Peters settlement shall remain in place for a period of

>ninety (90) days from the Effective Date, as defined in the Plan, subject to a request from Freeborn & Peters to extend the escrow agreement for such additional time as Freeborn & Peters, the Debtor and [SIG] may agree, [SIG] and the Debtor shall not unreasonably reject a request for an extension.

*See* Exhibit D, at ¶ C (emphasis added).

20. The Effective Date of the Plan was May 10, 2012. As such, the Escrow Account is required to remain in place through and including August 8, 2012, absent an agreement between the Debtor, SIG and F&P.

21. Presently, the Illinois District Court has not made a determination as to whether the Settlement Agreement was entered in good faith, within the meaning of, and consistent with, the Contribution Act. As such, F&P has not received a distribution on account of the F&P Claim.

## **ARGUMENT**

22. In its Motion, Argentum alleges that all unsecured creditors have received full distribution under the Plan and that the Plan has been substantially consummated within the meaning of Section 1101(2) of the Bankruptcy Code. The Debtor requests that the Bankruptcy Court enter a final decree and close the Bankruptcy Case. Although F&P understands the Debtor's desire to expedite the Chapter 11 process, the fact remains that the Bankruptcy Case has not been "fully administered," as required under Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"). As such, the Bankruptcy Case cannot be closed in accordance with Section 350 of the Bankruptcy Code.

23. Section 350 instructs that a court shall close a bankruptcy case *after* an estate is fully administered. *See* 11 U.S.C. § 350(a). Bankruptcy Rule 3022 similarly provides that "*[a]fter an estate is fully administered* in a chapter 11 reorganization case, the court, on its own

motion or on motion of a party in interest, shall enter a final decree closing the case." (emphasis added).[2]

24. "Fully administered" is not defined in the Bankruptcy Code. "At one extreme, an estate could be fully administered when a Chapter 11 plan is confirmed and the estate dissolves . . . At the other extreme, an estate could be fully administered when all that is called for under a plan occurs." *In re JMP-Newcor Int'l, Inc.*, 225 B.R. 462, 465 (Bankr. N.D. Ill. 1998) (citing *In re Mold Makers, Inc.*, 124 B.R. 766, 768 (Bankr. N.D. Ill. 1990)). However, "[s]ince the entry of a final decree is essentially an administrative task, any analysis or enunciation of the standards applicable to the final decree must, of necessity, be limited largely to hornbooks and the Advisory Note that accompanies [Bankruptcy Rule 3022]." *In re Kliegel Bros. Univ. Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999).[3]

25. The Advisory Committee Note to Bankruptcy Rule 3022 includes a list of non-exhaustive factors courts have relied upon in determining whether an estate has been fully administered:

> (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.

---

[2] The legislative history that accompanies Section 350 provides that "[t]he Rules of Bankruptcy Procedure will provide the procedure for case closing." S. Rep. No. 95-589, at 49 (1995).

[3] While the Seventh Circuit Court of Appeals has not issued a definitive ruling on what constitutes "fully administered," it noted in *dicta* that at least one bankruptcy court has defined fully administered as indicating the point when the estate reaches substantial consummation as defined by section 1101(2) of the Bankruptcy Code while another bankruptcy court has relied on the factors enumerated in the Advisory Committee Note that accompanies Bankruptcy Rule 3022. *See In re Wade*, 991 F.2d 402, 407 n.2 (7th Cir. 1992).

Fed. R. Bankr. P. 3022, Advisory Committee Note (1991). *See*, *e.g.*, *Wade*, 991 F.2d at 407 n.2 (citing *Mold Makers*, 124 B.R. at 768-69); *In re Xpedior Inc.*, 354 B.R. 210, 219 (Bankr. N.D. Ill. 2006).

26. A determination that a bankruptcy case is fully administered and may be closed should be decided on a case-by-case basis. *See In re Johnson*, 402 B.R. 851, 856 (Bankr. N.D. Ind. 2009). The court's determination does not hinge on a showing of each factor. *See Kliegel Bros.*, 238 B.R. at 542 n.16; *In re Jordan Mfg. Co., Inc.*, 138 B.R. 30, 35 (Bankr. C.D. Ill. 1992). As the court in *Kliegel Bros.* concluded:

> The factors set forth in the [Advisory Committee] Note are plainly an aid or checklist that serves to insure that there is no unfinished business before the Court or the case. (footnote omitted) With this purpose in mind, it follows that an applicant seeking a final decree must . . . provide the court with information sufficient to enable it to assess, at a minimum, whether and to what extent these factors have been met.

238 B.R. at 542.

27. To aid a court in determining whether to enter a final decree or close a case, Local Rule 3022-1(2) provides, in part, that "[u]nless the court orders otherwise, debtors or other parties in interest moving after chapter 11 plan confirmation either to close the case or enter a final decree shall . . . **state within the notice or motion the actual status of payments due to each class under the confirmed plan**." (emphasis added) Additionally, Section 704(a)(9) of the Bankruptcy Code, as incorporated under Sections 1106(a)(1) and 1107(a), requires a debtor-in-possession to "make a final report and file a final account of the administration of the estate with the court and with the United States trustee."

28. As of the filing of the Motion, as well as the Objection, the Debtor has not filed a final account of the estate's administration as required by Section 704(a)(9), nor stated the actual

status of payments due to *each* class under the confirmed Plan as required by Local Rule 3022-1. Absent a final report denoting the status of payments to each class under the confirmed Plan, F&P maintains that the Bankruptcy Case falls short of being fully administered for the purposes of Section 350 and Bankruptcy Rule 3022 such that a final decree can be entered. *Accord Wade*, 991 F.2d at 408 (noting within the context of a chapter 7 case that at a minimum, "full administration" encompasses the filing of a final report pursuant to Section 704(a)(9)).

29. Argentum states in the motion that all unsecured creditors have received full distributions under the Plan. However, despite this representation, the Motion is devoid of any statements regarding the status of payments due to the remaining classes under the Plan. Of particular note, F&P has not received a distribution on account of its unsecured claim in accordance with the terms of the Confirmation Order and the Settlement Agreement. Further, it is questionable whether F&P will be entitled to the funds set aside in the Escrow Account or even if the Escrow Account will be maintained beyond the deadline set forth in the Confirmation Order.

30. This is not a situation where F&P is seeking to keep the case opened because of the possibility that the Bankruptcy Court's jurisdiction make be invoked at a later date to deal with the parties' disputes. The fact remains that absent a favorable ruling from the Illinois District Court on the Settlement Agreement, the F&P Claim and the Argentum Claims have not been fully resolved in the Bankruptcy Case that impacts the distribution to unsecured creditors. In the event the Illinois District Court decides not to enter a good faith finding, the Settlement Agreement will be null and void between the parties, thereby allowing F&P to seek full payment on its originally filed proof of claim while Argentum attempts to pursue pre-petition causes of actions against F&P. Simply stated, there is unfinished business in the Bankruptcy Case. And

until the Argentum Claims and the F&P Claim have been fully and finally resolved, the Bankruptcy Case is not fully administered such that a final decree can be entered.

31.     Although Argentum argues that the final decree should be entered because the Plan has been substantially consummated, substantial consummation "is not one of the enunciated prerequisites to the entry of a final decree." *See Kliegel Bros.*, 238 B.R. at 544-45. *See also Wade*, 991 F.2d at 407 n.2 (Seventh Circuit notes that the concepts of "fully administered" and "substantial consummation" are distinct rather than mutually defining); *Ground Sys., Inc. v. Albert (In re Ground Sys., Inc.)*, 213 B.R. 1016, 1018 (B.A.P. 9th Cir. 1997)(explaining that "fully administered" and "substantial consummation" are not interchangeable). Substantial consummation is not the exclusive requirement for obtaining a final decree in relation to the requirement in Section 350 and Bankruptcy Rule 3022 that the bankruptcy case must be fully administered. *See Kliegel Bros.*, 238 B.R. at 544-45. Standing alone, Argentum's representation of substantial consummation does not sufficiently establish that the Bankruptcy Case has been fully administered such that a final decree should be entered.

WHEREFORE, Freeborn & Peters LLP respectfully requests that the Debtor's *Motion For Entry of Final Decree* closing the Bankruptcy Case be denied, and for other relief that this Court deems to be just and fair.

Date: July 20, 2012

Respectfully submitted,

FREEBORN & PETERS LLP

By:  /s/ Wendy E. Morris-Campbell
         One of its Attorneys

Richard S. Lauter (ARDC No.: 6182859)
Wendy E. Morris-Campbell (ARDC No.: 6280670)
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone:  312.360.6000
Facsimile:  312.360.6520